Plaintiff asks for compensation in the sum of $7.80 per week for a period of 400 weeks plus $25 medical expenses, less the amount already paid him, for total permanent disability resulting from two injuries which he claims to have received while working for the defendant, one on August 30th and the other on December 3, 1937. The first injury was received when a tractor ran over his right foot injuring it and bruising his left leg, and the second injury consisted of a double hernia which he claims to have received while lifting a cross-tie as he was assisting in unloading a "drag line" from a flat car.
The defendant admits that plaintiff received an injury on August 30, 1937, when the tractor ran over his foot, which injury consisted of a fracture of the first metatarsal bone of his right foot and contusions of his left leg near the ankle, and that he was paid full compensation for said injury to December 1, 1937, on which date it is alleged he had fully recovered from the injury and returned to work voluntarily. The defendant denied that plaintiff sustained a hernia on December 3, 1937, and avers that he had been suffering from a hernia long prior to that time which hernia was not connected with any injury received by him while working for the defendant. It is admitted by the defendant company that it paid plaintiff compensation for the disability resulting from the hernia to February 15, 1938, and that it furnished plaintiff an operation for the hernia the latter part of January, 1938, but *West Page 105 
this was done as an act of charity to plaintiff and not under any admission of liability; that if plaintiff did sustain a hernia while in its employ, he was cured of the hernia by the operation and suffers no further disability therefrom.
From a judgment rejecting his demands, plaintiff has appealed.
The evidence shows that the tread of a heavy tractor ran over plaintiff's right foot between the ankle and toes, fracturing the first metatarsal bone and striking and bruising his left leg above the ankle. He testified that the tractor also struck his right leg just above his ankle. He was taken to Dr. Catchings, the company doctor at Woodville, Mississippi, near where plaintiff was working when injured, the same day of the injury, and this doctor made an X-ray of plaintiff's feet. The only injury found by this doctor was a fracture of the first metatarsal bone of the right foot and a contusion of the left leg, but no fracture of that leg. The right foot and ankle were put in a plaster cast until November 6, 1937, a little over two months, at which time the cast was removed and weight bearing permitted on this leg. The doctor testified that at that time the injury appeared well healed and the foot was in good position with good functional results. The injury to the left leg was minor in nature and there is no question but that the injury to this leg has completely healed.
Plaintiff went back to work on December 1st, a little less than a month after the cast was taken off. He says his leg was not well at that time; that his leg would swell and cause pain; that he went back to work because the foreman wanted him to come back. He testified that on the third day after he returned to work, he picked up a heavy cross-tie and felt a severe pain like something tearing. He told the foreman that his side was hurting but continued working for the remainder of the day, and on the way home that night riding in the truck with some other men the pain became so severe that he had to make a bandage out of a handkerchief with which to tie up his side. He was sent to Dr. Lorio by the company doctor for an operation, and the operation was performed by Dr. Lorio the latter part of January, 1938.
Dr. Lorio testified that he performed an operation on plaintiff for a bi-lateral hernia and that the operation was a complete success; that both hernias were definitely cured; that he examined the plaintiff just before the trial and found no sign of hernia. Plaintiff testified, however, that his side hurts when he tries to work.
There is considerable doubt from the testimony whether or not plaintiff sustained a hernia when lifting the cross-tie as he claims. There is evidence showing that he had a left inguinal hernia several years previous to this date. He was in the Charity Hospital in 1932, and the reports of the hospital show that he was then thought to have a left inguinal hernia, at least he was found to have relaxed inguinal rings. At the time plaintiff claims to have received the hernia, he showed no symptoms usually found where a hernia is caused from a strain or trauma, such as nausea, pallor, etc. It may be, and probably is true, that the strain in lifting the tie aggravated the pre-existing hernia. But assuming that such was the case, or that the strain caused a hernia or hernias, according to the testimony of Dr. Lorio, the operation cured the hernias and plaintiff is in a better condition now in that respect than he was before sustaining the hernias. If he now has weak inguinal rings, as one doctor testified, he is now in no worse condition than he was before he claims to have received a hernia in lifting the tie. We can therefore eliminate the hernia as a basis for his claim for compensation.
Plaintiff testified that his right ankle swells and gives him pain when he tries to work. He endeavors to connect this condition of his right leg with the injury caused by the tractor in August, 1937.
Dr. Watson examined plaintiff in February, 1939. He found that his right leg was slightly crooked; that the ligaments of his ankle were somewhat stiff and the blood vessels under the knee were enlarged and distorted. Dr. Watson was of the opinion that if plaintiff could not use his right foot any better than he claimed he could, his ability to work was impaired.
Summing up the testimony, we find that there is a slight swelling and stiffness in plaintiff's right ankle when he uses his foot for a considerable length of time. He apparently has varicose veins in his legs, but there is nothing to indicate that these were caused by the injury to his foot when the tractor ran over it in August, *West Page 106 
1937. Plaintiff also appears to have some signs of tuberculosis, but whether or not he has this disease, it certainly does not appear that the injury to his foot caused it or had anything to do with it.
Dr. Williams made X-ray pictures of plaintiff's right foot in September, 1938, which showed an old healed fracture of the right fibula just above the ankle joint which has left a slight deformity. It is contended by plaintiff's counsel that this old fracture is a result of the injury to plaintiff's foot in August, 1937, and that the present condition of his ankle and his right foot is caused from that fracture; that the deformity, stiffness and swelling all result from that accident. However, as already stated, according to Dr. Catchings there was no fracture of the fibula above the right ankle when he examined the plaintiff just after his foot had been run over by the tractor, or at least, he did not notice any such fracture. It does seem that if there had been a fracture of a bone in plaintiff's right leg above his ankle, this doctor would have seen and known about it. In fact, the doctor says if there had been an injury in the right ankle it would have shown in the picture.
It is significant that plaintiff never complained of any injury to his right leg above his ankle when Dr. Catchings took the pictures and treated him for the injury to this foot. There was then either no fracture of the leg above the ankle or else he did not know about it which latter theory seems improbable. Moreover, he went back to the Charity Hospital in March, 1938, for treatment and the reports of the hospital show that he then made no complaint of any pain or trouble in his right leg, nor was any swelling or stiffness of this leg indicated in the examination and diagnosis made by the hospital authorities.
This unfortunate plaintiff recites a list of injuries which he received prior to the two on which he now relies as a basis for compensation making it difficult to understand why he is not in an even worse condition than he is now in. He was kicked in the back by a mule; had his skull fractured; a skidder line broke and hit his ankle (so far as we know this may have had something to do with the present condition of his ankle); he was scalded by the bursting of a water hose; a rehaul skidder tied around him and pulled him through the woods; a mule threw him and stuck a stick in him; and, finally, he received the two injuries which form the basis for his present claim for compensation.
It appears that plaintiff's employer has treated him fairly and has resolved the doubt as to his last alleged injury in his favor and paid him compensation and gave him an operation for the double hernia which might not have been caused by an injury received while working for the company.
Plaintiff's wife testified that both of his ankles swell when he attempts to work, the right much more than the left. There is also evidence that he limped on one of his feet before the tractor injury. These facts indicate that the condition of his feet could have resulted from other causes.
Plaintiff bore the burden of proving that whatever disability he now suffers has a causal connection with the injuries he claims to have received in August and December, 1937. The proof of this connection is not sufficient to form the basis of a judgment for compensation, and we are not in position to hold that the trial judge was in error in rejecting his demands.
For the reasons assigned, the judgment appealed from is hereby affirmed.